**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. 18-CR-156-D** |
| | ) | |
| **ELIZABETH ANDRADE,** | ) | |
| **a/k/a "Beth,"** | ) | **Violations:** |
| **a/k/a "Porsche,"** | ) | **18 U.S.C. § 1591(a)(1)** |
| **a/k/a "Bobbi Monroe,"** | ) | **18 U.S.C. § 1591(b)(2)** |
| **a/k/a "Tiffany,"** | ) | **18 U.S.C. § 1591(c)** |
| | ) | **18 U.S.C. § 1594(c)** |
| **Defendant.** | ) | **18 U.S.C. § 1594(d)(1)** |
| | ) | **18 U.S.C. § 1594(d)(2)** |
| | ) | **18 U.S.C. § 1594(e)(1)(A)** |
| | ) | **18 U.S.C. § 1594(e)(1)(B)** |
| | ) | **28 U.S.C. § 2461(c)** |

## SUPERSEDING INFORMATION

The United States Attorney charges:

### Introduction

At all times relevant to this Information,

1. **ELIZABETH ANDRADE**, a/k/a "Beth," a/k/a "Porsche," a/k/a "Bobbi Monroe," a/k/a "Tiffany," was a resident of Oklahoma City, in the Western District of Oklahoma.

2. Germaine Coulter, Sr., a/k/a "Slim," was a resident of Oklahoma City, in the Western District of Oklahoma.

3. Jane Doe, a/k/a "Cookie," was a minor female who had not reached 18 years of age and who resided in and attended high school in the Western District of Oklahoma.

4. Minor 1 was a minor female who had not reached 18 years of age and who resided in and attended school with Jane Doe in the Western District of Oklahoma.

**COUNT 1**
(Conspiracy to Commit Child Sex Trafficking)

5. The Federal Grand Jury incorporates paragraphs 1–4 by reference.

6. Between on or about January 27, 2018, and on or about February 19, 2018, in the Western District of Oklahoma and elsewhere, defendant

**--------------------------------ELIZABETH ANDRADE,**
**a/k/a "Beth,"**
**a/k/a "Porsche,"**
**a/k/a "Bobbi Monroe,"**
**a/k/a "Tiffany,"----------------------------------------**

knowingly, intentionally, and with interdependence, combined, conspired, and agreed with Germaine Coulter, Sr., and with others known and unknown to

the Federal Grand Jury, to commit the offense of child sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(2), and (c).

**The Object of the Conspiracy**

7. The object of the conspiracy was to operate and perpetuate a prostitution enterprise that recruited, enticed, provided, transported, harbored, obtained, and maintained minor(s) who had not attained the age of 18 years, for the financial benefit of Coulter and others, and for commercial sex transactions with others known and unknown to the Federal Grand Jury.

**Manner and Means**

8. The object of the conspiracy was accomplished as follows:

A. Coulter and **ANDRADE** maintained mobile telephone accounts and electronic accounts with various websites, applications, and social media through which they advertised and promoted a prostitution business, at the direction of Coulter.

B. Coulter and **ANDRADE** recruited and enticed minor females to perform sex work as part of their business, by promising independence, money, cars, nail services, apartments, and drugs.

C. When a prospective customer emailed, sent text messages, called, or contacted one of **ANDRADE**'s phone numbers, accounts, or devices,

**ANDRADE** negotiated and arranged a commercial sex transaction with the customer at an agreed location and time.

D. The communications between **ANDRADE** and the prospective customer sometimes involved photos sent back and forth of the prospective customer, **ANDRADE**, and the minor female **ANDRADE** offered to provide for commercial sex acts.

E. **ANDRADE**, Coulter, and Minor 1 drove to the location and the customer paid in cash or electronically for a commercial sex act. The customer, **ANDRADE**, and/or the minor female participated in the agreed commercial sex act.

F. **ANDRADE** collected the proceeds of the commercial sex transaction and delivered them to Coulter.

**Acts in Furtherance of the Conspiracy**

9. To effect the object of the conspiracy, **ANDRADE** and Coulter committed the following acts in furtherance of the conspiracy, among others:

A. In the days leading up to on or about January 28, 2018, **ANDRADE** and Coulter recruited Doe to perform sex work for Coulter. Coulter instructed what Doe was to do with customers, including how to perform specific sex acts, directed that she was expected to make $1,000.00

per day, all of which would go to him, and promised her a car, business cards after she turned 18, and an apartment if she was successful.

B. In or about January and February 2018, Coulter directed Doe to call him "Daddy." Coulter asked Doe to treat Minor 1 as her sister and to perform commercial sex work so that Minor 1 would have a place to live and food to eat.

C. On or about January 28, 2018, at approximately 6:55 a.m., **ANDRADE** took photos of Doe posing on a bench in thong underwear, as well as in jeans and a lavender bra, in a hotel/motel in the Oklahoma City metropolitan area. Such photos were taken for the purpose of advertising and promoting Doe, a/k/a "Cookie," to prospective customers.

D. On or about January 28, 2018, **ANDRADE** announced on a social media site where she advertised commercial sex: "I have new girlfriend. #okc guys. 3 of us hanging out[.]"

E. On or about January 28, 2018, **ANDRADE** or Minor 1 transported Doe to a commercial sex transaction. Coulter sent a message to Doe that said, "Break luck," which is slang for a sex worker successfully completing the first commercial sex transaction of the day. Doe engaged in a commercial sex act at a customer's residence in the Oklahoma City

metropolitan area. When Coulter received a text message that the customer had not "nutted," he directed Minor 1: "Time Up baby get her out anyway possible with the money[.] [M]ake him spend more money now baby asap[.] [C]ome on[,] if he doesn't spend more baby[,] you have to it[']s business." Coulter advised Minor 1: "W[]e have to get her home . . . We on our way over there now . . . Do I need to go to her mother . . . We have to be on time." Coulter sent a text message to Doe's phone that said, "We can't mess it up with your mom very important so we can keep it moving."

F. On or about January 29, 2018, Doe sent photos of herself posing in underwear to Coulter by multimedia message. Coulter then sent the photos to **ANDRADE** to send to prospective customers. Coulter also sent the photos to three contacts of his, along with messages including, "Let niggas know I got a kitty cat for sale 20yr hot and ready," and he informed one contact that the price was $200 for oral sex. Coulter advised one contact, "I have kitty cat for sale bro . . . Tell your friends . . . And I will hook you up."

G. On or about January 31, 2018, **ANDRADE,** Coulter, or Minor 1 transported Doe to a commercial sex transaction. At approximately 10:19 pm, Coulter sent a message to Doe that said "Make sure you call me when you break luck[.]"

H. On or about February 1, 2018, **ANDRADE** communicated with Doe, asked when she got out of class at her school, and arranged to pick her up from school at 11:50 am. Coulter communicated with Doe's mother and agreed to bring Doe home by 5 pm. Meanwhile, **ANDRADE** sent a message via Facebook Messenger to a prospective customer—who had previously asked **ANDRADE** to "find someone" for a "two girl situation"—that she "[f]ound a friend[.]" Doe's mother sent a message to Coulter at approximately 5:53 pm asking if he could still bring Doe home. Coulter advised that **ANDRADE** would be dropping her off, and that they were running "a little late [because] my nephew died today."

I. On or about February 2, 2018, Coulter asked Doe's mother if Doe could come on a trip to Kansas with him. Doe's mother declined because Doe had not "been home all week." Coulter then exchanged messages with **ANDRADE,** explaining that "Cookie can't go." **ANDRADE** told Coulter**,** "Leave me and the kids at a nice room. I will get groceries. I will make calls and set up things. . . . I will get Cookie to ride when called[.]" Coulter then sent a message to Doe that "[**ANDRADE**] said you can ride with her while I'm gone. . . . Can you make that happen baby[?]"

J. On or about February 2, 2018, Coulter and **ANDRADE**

transported Doe to Kansas, where they posted advertisements for commercial sex on various websites, including eros.com, Eccie.net, and Wichita.backpage.com. Coulter and **ANDRADE** then transported Doe back to Oklahoma on or about February 3, 2018, and Coulter thanked Doe's mother "for letting her go[;] the kids had fun."

K. On or about February 5, 2018, Coulter sent a series of text messages to Doe, stating: "Are you ok baby . . . Communication bitch . . . I need to know that your [sic] ok hoe[.]"

L. On or about February 7, 2018, **ANDRADE** offered rates to a prospective customer over text message, specifically $200 for an hour and $125 for a half hour. The prospective customer asked for fetish work, and **ANDRADE** quoted a price of $300. **ANDRADE** then offered, "I have a friend with me , you play with both of us[,]" gave the price of $400 for both, and sent a photo of Doe.

M. Meanwhile on February 7, 2018, Coulter sent a message to Doe asking "How much[?]" Doe answered, "Idk he gave it to her in a bank envelop she said it was 300[.]" Clarifying that he was asking how much it would be to activate a pre-paid phone, Coulter then responded, "No the phone . . . But good you pay attention baby that's my bitch[.]"

N. In text messages with another prospective customer later on or about February 7, 2018, **ANDRADE** again quoted a rate of $200 for an hour and $125 for a half hour. **ANDRADE** offered a "friend" and sent photos of Doe to the prospective customer. The prospective customer asked if the rate was for both together, and **ANDRADE** said no, and added: "Dont be cheap[.]"

O. At approximately 6:20 pm, on or about February 7, 2018, **ANDRADE** transported Doe to a commercial sex transaction, which **ANDRADE** and Doe completed with a customer co-conspirator. After that, Coulter took Doe to the mall and paid for her nails to be done. The customer sent a message to **ANDRADE** at approximately 7:43 pm and said, "Thank you, truly enjoyed that from both of you . . . Your friend is pretty amazing to[o.]"

P. On or about February 8, 2018, **ANDRADE** coached Doe in asking her mother for permission to spend the night with **ANDRADE** and Coulter. Doe said, "She said not today. I have been leaving to[o] much and haven't been home on time[.]" **ANDRADE** responded, "Tell her you will be on time today. . . . Tell her. …I will be better at following the rules[.]" Doe responded, "She said no but I'm sure shell [sic] let me stay the night tomorrow[.]" **ANDRADE** said, "That would be so cool." On or about February 9, 2018,

Coulter communicated with Doe's mother to have Doe dropped off at the Best Western hotel in Oklahoma City to stay with them for the weekend.

Q. On or about February 11, 2018, Coulter sent messages to Doe, who indicated she was at her boyfriend's. Coulter sent a message that said, "I need you now[,]" and Doe responded, "I can't leave[.]" Coulter then told Doe, "Figure it out now[.] Can you do that[?] Answer me[.] Make sure he doesn't see my text anymore[.] Asap I need to see you soon ok[?]"

R. On or about February 12, 2018, Coulter sent messages to Doe asking her to tell him if she heard anything about Minor 1. She agreed to do so. Coulter then said, "Thanks baby I got you stay down! We meat [sic] for a reason believe that[.] [D]on't let know one [sic] or anything come between us[.] I will do the same on me !!" Later that day, Coulter told Doe: "K from now on we tell no one about our business not even your boy friend!"

S. On or about February 14, 2018, Coulter and **ANDRADE** communicated with Doe by text message and phone calls about picking up Doe after school. **ANDRADE** paid to promote an existing online advertisement for escort services to the top of the listings. At approximately 2:30 pm, Coulter sent a message to Doe that he was on his way. A little later, Coulter sent a message to Doe that said, "I miss seeing you baby[.] But we

need to get to work also!!!" A few hours later, a prospective customer sent a text message to **ANDRADE** and asked, "So yall have any pictures like you was saying[?]" Within minutes, **ANDRADE** sent two photos of Doe to the prospective customer.

T. On or about February 16, 2018, Coulter sent a message to Doe that she needed to get her nails done, advising, "We have to get to work ok[?]"

U. On or about February 18, 2018, Doe asked Coulter if he was coming to get her from her mother's house in Edmond, Oklahoma. Coulter responded, "When I come can you ride for a minute we have to go get it[.]" Doe agreed, and Coulter arrived shortly after, texting Doe: "I'm out[s]ide" at approximately 5:07 pm. Approximately 7 hours later, around midnight, Coulter sent text messages to Doe telling her goodnight, or "Gn baby . . . Say your prayers[.]"

All in violation of Title 18, United States Code, Section 1594(c).

## CRIMINAL FORFEITURE ALLEGATIONS

A. The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture.

B. Upon conviction of the violation alleged in Count 1 of this Information, Defendant shall forfeit to the United States any property which Defendant used or intended to be used to commit or to facilitate such violation, and any property constituting, or derived from, any proceeds which Defendant obtained, directly or indirectly, as the result of any such violation, including, but not limited to:

1. Any and all cellular or mobile telephones used in the commission of the offense; and

2. Any and all vehicles used in the commission of the offense.

C. Pursuant to Title 28, United States Code, Section 2461(c), Defendant shall forfeit substitute property, up to the value of the property described in paragraph B, if, by any act or omission of Defendant, the property described in paragraph B, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been

substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Sections 1594(d)(1), (d)(2), (e)(1)(A) and (e)(1)(B), and Title 28, United States Code, Section 2461(c).

ROBERT J. TROESTER
Acting United States Attorney

K. McKENZIE ANDERSON
JESSICA L. PERRY
Assistant U.S. Attorneys